UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARIO ARRENDONDO,

    Plaintiff,

v.

NCO FINANCIAL SYSTEMS, INC.,

    Defendant.
_____/

## Complaint

**I.**   **Introduction**

1. This is an action for damages, brought by a consumer against a debt collector for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the Michigan Occupational Code ("MOC"), M.C.L. § 339.901 *et seq.*

**II.**   **Jurisdiction**

2. This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), and 28 U.S.C. § 1331. This Court has supplemental jurisdiction regarding plaintiff's state law claims under 28 U.S.C. § 1367. Venue in this judicial district is proper because the pertinent events took place here.

**III.**   **Parties**

3. Plaintiff Mario Arrendondo is an adult, natural person residing in Kent County, Michigan. Mr. Arrendondo is a "consumer" and "person" as the terms are defined and used in the FDCPA. Mr. Arrendondo is a "consumer," "debtor" and "person" as the terms are defined

1

and used in the MOC.

4. Defendant NCO Financial Systems, Inc. ("NCO") is a Pennsylvania corporation doing business at 507 Prudential Road, Horsham, Pennsylvania 19044. NCO is qualified to do business in Michigan. The registered agent for NCO is The Corporation Company, 30600 Telegraph Road, Suite 2345, Bingham Farms, Michigan 48025. NCO uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. NCO regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. NCO is a "debt collector" as the term is defined and used in the FDCPA. NCO is licensed (Nos. 2401001216, 2401001189, 2401001190, 2401001325, 2401001352, 2401001360, 2401001457, 2401001480, 2401001482, 2401001483, 2401001561, 2401001593, 2401002052, 2401002091 and 2401002223) to collect consumer debts in Michigan. NCO is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

**IV. Facts**

5. Mr. Arrendondo had a credit account which he used to purchase goods and/or services for personal, family and household purposes. Any resulting obligation to pay money was a "debt" as the term is defined and used in the FDCPA and MOC.

6. Mr. Arrendondo's creditor claimed that Mr. Arrendondo's failed to repay the debt. Mr. Arrendondo's creditor claimed that Mr. Arrendondo's account was in default.

7. Mr. Arrendondo's creditor, or a successor, assignee or agent of Mr. Arrendondo's creditor, placed the account for collection with NCO to collect the alleged debt from Mr. Arrendondo.

8. Alternatively, NCO purchased the account and related, alleged debt after the

2

account allegedly was in default.

9. Mr. Arrendondo disputes the alleged debt.

10. Mr. Arrendondo refuses to pay the alleged debt.

11. Mr. Arrendondo is represented by an attorney in connection with efforts by NCO or anyone else to collect the alleged debt. The name, address and telephone number of Mr. Arrendondo's attorney is set forth at the end of this complaint. The attorney's representation of Mr. Arrendondo shall continue indefinitely, and even after this lawsuit is closed.

12. In or about September of 2012, NCO used an automated dialing system to place one or more telephone calls to a telephone number belonging to Mr. Arrendondo's mother, Sara Arrendondo, and used a pre-recorded and/or computer generated voice to leave the following message on a telephone answering machine belonging to Mr. Arrendondo's mother: "This is an important message from NCO Financial Systems, a debt collection company. This is an attempt to collect a debt and any information obtained will be used for that purpose. Please return the call to Nicole Irving at 800-709-8625. Again, that's Nicole Irving at 800-709-8625. Thank you. NCO Financial Systems is a debt collection company. This is an attempt to collect a debt and any information obtained will be used for that purpose."

13. NCO placed the described telephone calls to the telephone number belonging to Mr. Arrendondo's mother and left the described message on the telephone answering machine belonging to Mr. Arrendondo's mother for the purpose of attempting to collect an alleged debt from Mr. Arrendondo.

14. The only reason NCO placed the described telephone calls to the telephone number belonging to Mr. Arrendondo's mother and left the described message on the telephone

answering machine belonging to Mr. Arrendondo's mother was in connection with efforts by NCO to collect an alleged debt from Mr. Arrendondo.

15. Mr. Arrendondo's mother heard the message left by NCO on the telephone answering machine owned by Mr. Arrendondo's mother.

16. On or about September 28, 2012, Mr. Arrendondo's mother responded to the message left by NCO on her telephone answering machine and called NCO at 800-709-8625. The telephone call was answered by a NCO employee. The NCO employee stated that his name was Rahdeen Griffin (or the phonetic equivalent). Mr. Arrendondo's mother asked to speak with Nicole Irving. The NCO employee stated that Nicole Irving was not available. The NCO employee asked Mr. Arrendondo's mother whether she had received a message or a letter from NCO. Mr. Arrendondo's mother replied that NCO had left a message on her telephone answering machine to call NCO, so that is what she was doing. The NCO employee used NCO's caller ID to look up Mr. Arrendondo's mother's telephone number and then used that information to look up Mr. Arrendondo's account. The NCO employee stated that NCO had called Mr. Arrendondo's mother's telephone number in efforts to contact "Mario." Mr. Arrendondo's mother replied, "that's my son." The NCO employee asked Mr. Arrendondo's mother to state her son's last name. Mr. Arrendondo's mother replied, "it's Arrendondo." The NCO employee instructed Mr. Arrendondo's mother to give a message to Mr. Arrendondo to call NCO.

17. Mr. Arrendondo's mother communicated to Mr. Arrendondo that NCO had left a message on her telephone answering machine stating that NCO was a debt collection company, that NCO was calling to collect a debt and that any information obtained would be used for that purpose, and that NCO had instructed the recipient of the message to call NCO at 800-709-8625.

4

Mr. Arrendondo's mother communicated to Mr. Arrendondo that when she placed a telephone call to NCO and stated that she was responding to a message left by a NCO debt collector named Nicole Irving, the NCO employee stated that Mario Arrendondo was the person the NCO debt collector was attempting to contact.

18. NCO communicated to Mr. Arrendondo's mother that NCO was attempting to collect a debt from Mr. Arrendondo.

19. NCO communicated information regarding the alleged debt directly and indirectly to Mr. Arrendondo.

20. NCO communicated information regarding the alleged debt directly and indirectly to Mr. Arrendondo's mother.

21. NCO did not obtain the prior consent of Mr. Arrendondo to communicate with Mr. Arrendondo's mother in connection with the collection of the alleged debt.

22. NCO did not obtain the prior consent of Mr. Arrendondo to communicate to Mr. Arrendondo's mother that NCO was attempting to collect a debt from Mr. Arrendondo.

23. Mr. Arrendondo has never given NCO permission to speak with Mr. Arrendondo's mother regarding the alleged debt.

24. A debt collector may not communicate, in connection with the collection of a debt, with any person other than the consumer, except to acquire "location information" about the consumer. 15 U.S.C. § 1692b; 15 U.S.C. § 1692c(b).

25. The FDCPA defines "location information" to mean "a consumer's place of abode and his telephone number at such place, or his place of employment." 15 U.S.C. § 1692a(7).

26. A debt collector when communicating with any person other than the consumer

for the purpose of acquiring location information about the consumer shall not state that such consumer owes any debt. 15 U.S.C. § 1692b(2).

27. The FDCPA states that a debt collector when communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall, "only if expressly requested, identify his employer." 15 U.S.C. § 1692b(1).

28. NCO disclosed the name of its company in the message NCO delivered to Mr. Arrendondo's mother, without an express request for such information by Mr. Arrendondo's mother, violating the FDCPA.

29. NCO and its employee went beyond asking Mr. Arrendondo's mother for location information regarding Mr. Arrendondo, wrongfully asking Mr. Arrendondo's mother to deliver a message to Mr. Arrendondo to contact NCO.

30. NCO uses an automated dialing system to place a telephone call to a telephone number belonging to Mr. Arrendondo's mother and uses a pre-recorded and/or computer generated voice to leave a message for Mr. Arrendondo on a telephone answering machine belonging to Mr. Arrendondo's mother, without regard to whether the message might by heard by someone other than Mr. Arrendondo.

31. NCO could have used other methods to communicate with Mr. Arrendondo.

32. NCO could have chosen to communicate with Mr. Arrendondo by postal mail.

33. NCO could have chosen to communicate with Mr. Arrendondo by speaking directly to Mr. Arrendondo by telephone.

34. NCO could have chosen not to use an automated dialing system to place a telephone call to a telephone number and use a pre-recorded and/or computer generated voice to

disclose that NCO was attempting to collect a debt from Mr. Arrendondo.

35. NCO could have chosen to have a live person make the telephone call to Mr. Arrendondo and then use discretion regarding whether to deliver a message for Mr. Arrendondo. Instead, to save money and increase its profits, NCO chose to use an auto-dialer to indiscriminately place telephone calls and leave pre-recorded and/or computer generated messages on telephone answering machines, without regard for the privacy of consumers such as Mr. Arrendondo and without regard for the requirements of the FDCPA.

36. NCO violated 15 U.S.C. § 1692c(b) by leaving a recorded message on a telephone answering machine, which resulted in a communication to Mr. Arrendondo's mother that NCO was attempting to collect an alleged debt from Mr. Arrendondo. *Berg v. Merchants Association Collection Division, Inc.*, 586 F.Supp. 1336 (S.D. Fla. 2008).

37. NCO is a member of ACA International ("ACA").

38. ACA is a trade group for debt collectors. ACA has sent multiple writings to its members, including NCO, warning about the risks associated with violating the FDCPA by leaving a message on an answering machine or voice mail that could result in an unlawful disclosure to a third party that a consumer allegedly owes a debt.

39. NCO knowingly assumed the risk of violating the FDCPA by delivering a message stating that NCO was calling to collect a debt, knowing that the message might be heard by someone other than Mr. Arrendondo.

40. It was foreseeable to NCO that the recipient of a message left by NCO on a telephone answering machine stating that NCO was a debt collector attempting to collect a debt and asking for a return telephone call, would return the call to NCO, at which time NCO and its

employee would disclose the name of the person from whom NCO was attempting to collect a debt. In fact, it was the goal of NCO to have *someone* respond to NCO's message call NCO so that NCO could then disclose to the caller the name of the person from whom NCO was attempting to collect the debt.

41. NCO failed to maintain procedures reasonably adapted to avoid disclosing to a third party that a consumer owes a debt. Instead, NCO used a pre-recorded and/or computer generated voice to deliver messages for the consumer, knowing it was possible that the messages might be heard by someone other than the consumer, resulting in a return telephone call and subsequent, unlawful disclosure of the name of the consumer from whom NCO was attempting to collect a debt.

42. NCO scripted and intended to speak the pre-recorded and/or computer generated words that were spoke by NCO when delivering the above-described messages that were heard by Mr. Arrendondo's mother in connection with NCO's efforts to collect an alleged debt from Mr. Arrendondo.

43. NCO has been sued multiple times for allegedly violating the FDCPA by using an automated dialing system to place a telephone call and using a pre-recorded and/or computer generated voice to deliver a message for a consumer in efforts to collect a debt which resulted in an unlawful disclosure to a third party that NCO was attempting to collect a debt from the consumer. Despite all of those lawsuits, NCO has made the business decision to continue to use the same debt collection tactics, knowing that NCO on occasion will violate the FDCPA.

44. The acts and omissions of NCO and its employees done in connection with efforts to collect a debt from Mr. Arrendondo were done intentionally and wilfully.

45. NCO and its employees intentionally and wilfully violated the FDCPA and MOC.

46. As an actual and proximate result of the acts and omissions of defendant and its employees, plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, acute embarrassment, humiliation and suffering for which he should be compensated in an amount to be established by jury and at trial.

## V. Claims for Relief

### Count 1– Fair Debt Collection Practices Act

47. Plaintiff incorporates the foregoing paragraphs by reference.

48. Defendant has violated the FDCPA. Defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

   a) Defendant violated 15 U.S.C. § 1692b;

   b) Defendant violated 15 U.S.C. § 1692c;

   c) Defendant violated 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt; and

   d) Defendant violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from plaintiff.

**Wherefore,** plaintiff seeks judgment against defendant for:

   a) Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

   b) Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

   c) Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d)     Such further relief as the court deems just and proper.

## Count 2 – Michigan Occupational Code

49.     Plaintiff incorporates the foregoing paragraphs by reference.

50.     Defendant has violated the MOC. Defendant's violations of the MOC include, but are not necessarily limited to, the following:

a)     Defendant violated M.C.L. § 339.915(m) by bringing to public notice that the consumer is a debtor;

b)     Defendant violated M.C.L. § 339.915(n) by using a harassing, oppressive, or abusive method to collect a debt;

c)     Defendant violated M.C.L. § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee; and

d)     Defendant violated M.C.L. § 339.919 by failing to comply with Michigan law when speaking with someone other than the debt.

**Wherefore,** plaintiff seeks judgment against defendant for:

a)     Actual damages pursuant to M.C.L. § 339.916(2);

b)     Treble the actual damages pursuant to M.C.L. § 339.916(2);

c)     Statutory damages pursuant to M.C.L. § 339.916(2);

d)     Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2); and

e)     Equitable relief pursuant to M.C.L. § 339.916(1).

## Demand for Trial by Jury

Plaintiff demands trial by jury.

Dated: October 3, 2012

_____
Phillip C. Rogers (P34356)
Attorney for Plaintiff
40 Pearl Street, N.W., Suite 336
Grand Rapids, Michigan 49503-3026
(616) 776-1176
ConsumerLawyer@aol.com